FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 06, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CANDACE B.,[1]<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | No.   4:21-cv-5145-EFS<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, REVERSING THE ALJ DECISION, AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Candace B. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because it is undisputed that Plaintiff's incurable and progressive conditions ultimately rendered her disabled, and because the administrative law judge (ALJ) failed to determine when such disability first occurred, the ALJ reversibly erred in finding that Plaintiff did not suffer from a severe medically determinable impairment during the relevant period. This matter is remanded for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. § 404.1520(a).

[3] *Id.* § 404.1520(a)(4)(i), (b).

[4] *Id.* § 404.1520(a)(4)(ii), (c).

[5] *Id.* § 404.1520(a)(4)(iii), (d).

[6] *Id.* § 404.1520(a)(4)(iv).

[7] *Id.* § 404.1520(a)(4)(v), (g).

## II.    Background

In February 2019, Plaintiff filed applications for benefits under Title 2 and Title 16 based on erythromelalgia (Mitchell's disease),[8] Raynaud's syndrome,[9] high blood pressure, arthritis, and headaches.[10]  She alleged an onset date of October 1, 2013.  The agency denied both applications initially.

### A.    Agency Reconsideration: Title 16 Approved & Title 2 Denied

On reconsideration, the agency approved Plaintiff's Title 16 application, citing her symptoms related to erythromelalgia.  Using Plaintiff's February 2019 filing date as the established onset date, the agency concluded, "At this time, the

---

[8] According to the National Institute of Health, erythromelalgia (also called Mitchell's disease), "is a rare condition characterized by episodes of burning pain, warmth, swelling and redness in parts of the body, particularly the hands and feet." NIH, *Erythromelalgia Summary* https://rarediseases.info.nih.gov/diseases/6377/erythromelalgia (accessed Jan. 3, 2023).

[9] "erythromelalgia is a condition that causes the blood vessels in the hands and feet to narrow, decreasing blood flow. When this happens, parts of the body—usually the fingers and toes—become cold and numb, and change color (usually, to white or blue)." NIH, *What is Raynaud's phenomenon?* https://www.niams.nih.gov/health-topics/raynauds-phenomenon/basics/symptoms-causes (accessed Jan. 3, 2023).

[10] AR 20, 22, 193–215.

medical documentation of [Plaintiff's] progression of her illness supports that [she] would not be able to sustain a full work day/full work week—and her RFC is significantly less than sedentary for [Title] 16. . . ."[11]

Even so, the agency again denied Plaintiff's Title 2 application, finding there was no medical evidence of record showing that her erythromelalgia was disabling as of the alleged onset date of October 1, 2013.[12]  Plaintiff requested a hearing before an ALJ regarding her Title 2 application.

**B.    ALJ Hearing & Decision**

In March 2021, ALJ Marie Paluchuck held a telephonic hearing at which Plaintiff testified.[13]  A vocational expert was available but did not present testimony.

1.    Plaintiff's Testimony

At the hearing, Plaintiff's testimony focused on her erythromelalgia and Raynaud's-syndrome symptoms.  According to Plaintiff, she stopped working as an office manager in October 2013, primarily because her feet "were burning very badly every day . . . sometimes, for just a little bit.  Sometimes, all day."[14]  She said she was limited to standing for no more than 15 minutes at a time or she would go

---

[11] AR 96.

[12] AR 85, 88–89.

[13] AR 20, 40–58.

[14] AR 45.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

into "full flare."[15]  She further testified to having burning pain in her fingers during the relevant period, and she described how her symptoms affected her job performance and sleep.[16]  Plaintiff said that as bad as her symptoms were from 2013 to 2015, they had progressively worsened since.[17]

Plaintiff also explained her sparse medical history prior to 2016.  When she first quit her job in 2013, she intended to simply rest and "regroup" so that she could return to work.[18]  Then, for about two years, Plaintiff lacked insurance and could not afford treatment.  Finally, even when she gained insurance through her husband near the end of 2015, Plaintiff's doctors "couldn't figure out what it was, and there was—there was nobody in—in [her] network, a specialist at that time, to send [her] to."[19]  It was not until 2018 that Plaintiff's physicians reached the diagnosis of erythromelalgia.

///

//

/

---

[15] AR 46.

[16] AR 45, 48–49.

[17] AR 52, 57.

[18] AR 50.

[19] AR 51.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

2.    The ALJ's Determination & Findings

After the hearing, the ALJ denied Plaintiff's Title 2 application.  As to the

sequential disability analysis, the ALJ found as follows:

- Plaintiff met the insured status requirements through December 31,

  2016.

- Step one: Plaintiff had not engaged in substantial gainful activity during

  the period from her alleged onset date of October 1, 2013 through her

  date last insured of December 31, 2016.

- Step two: Plaintiff did not have any medically determinable impairments

  that were severe during the relevant period.  The ALJ found that

  although Plaintiff had the medically determinable impairments of ear

  pain, hypertension, GERD, hot flashes, hyperlipidemia, obesity, and low-

  back pain, "the medical evidence through the date last insured is

  insufficient to establish any of these conditions as severe, individually or

  in combination."[20]

The ALJ found Plaintiff not disabled at step two and did not proceed with

the remaining disability-analysis steps.  In reaching her decision, the ALJ found

Plaintiff's medically determinable impairments could reasonably be expected to

cause some of the alleged symptoms, but her statements concerning the intensity,

persistence, and limiting effects of those symptoms were inconsistent with the

---

[20] AR 23–24.

medical evidence.[21]  As support, the ALJ pointed to "the claimant's minimal treatment through the date last insured, the lack of any significant complaints in the treatment records, and the unremarkable examination findings."[22]  Citing the same reasons, the ALJ likewise discounted lay statements by Plaintiff's former employer and former coworker, each of whom had known Plaintiff for several years and described her as suffering from burning, red, and swollen hands and feet, starting sometime around 2011 and worsening thereafter.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24]  Plaintiff timely appealed to the Court.

//

/

---

[21] AR 24–26.

[22] AR 25.

[23] AR 26; *see* AR 296 ("I think she might have attributed it to just being overworked. When she left that job, the burning had already become quite bad and her feet and hands became red and swollen."); AR 301 ("She complained that they were burning a lot. . . . When I asked her what she thought the problem was, she said that maybe she was eating too much salty food or maybe it had something to do with her blood pressure issues. As time went on, I observed it getting worse . . . .").

[24] AR 1–6.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27]  Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28]  The Court considers the entire record, and the Court may not reverse an ALJ decision due an error that "is inconsequential to the ultimate nondisability determination."[29]

### IV.    Analysis

Plaintiff asserts that—although it took until around October 2018 for her to receive the proper diagnoses—she has suffered from intermittent flares of her erythromelalgia and Raynaud's-syndrome symptoms since 2010.[30] Plaintiff argues

---

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Id.* at 1115. *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

[30] ECF No. 9 at 2.

the ALJ failed to account for "multiple disabling opinions that relate back to the relevant period."[31]  Plaintiff further argues the ALJ  "should have called a medical expert to infer an onset date of the disabling nature of Plaintiff's Mitchell's disease/erythromelalgia and Raynaud's syndrome."[32]  In essence, Plaintiff contends the evidence of record establishes that her onset date preceded her date last insured: December 31, 2016.

For the reasons that follow, the ALJ reversibly erred by discounting medical opinions without providing sufficient explanation and by failing to determine Plaintiff's onset date.

## A.    Medical Opinions: The ALJ reversibly erred.

Plaintiff asserts the medical opinions of three different physicians as evidence that she became disabled prior to 2017.[33]

### 1.    Treating Physicians Sudeep Thapa, MD, and Brent Thielges, DPM

Treating physicians Sudeep Thapa, MD, and Brent Thielges, DPM, wrote letters opining as to Plaintiff's symptoms and limitations relating to

---

[31] ECF No. 9 at 2.

[32] ECF No. 9 at 10.

[33] As discussed further below, although medical opinions cannot be used at step two to establish the existence of a medically determinable impairment, such opinions may inform the analyses regarding its severity and onset date. *See* 20 C.F.R. § 404.1521; Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

erythromelalgia.  Plaintiff argues the ALJ erred in rejecting the medical opinions expressed in these two letters.

> a.     *In 2019, Drs. Thapa and Thielges each opined as to Plaintiff's severe symptoms and limitations.*

In April 2019, Plaintiff's treating rheumatologist, Sudeep Thapa, MD, wrote:

> [Plaintiff] is a patient of mine who has been diagnosed with primary erythromelalgia.  She has some degree of symptoms every day with significant flares of the disease periodically.  I expect that [Plaintiff] will get these flares in the future[,] as there is no specific cure for this disease.  The flares are associated with warmth, burning sensation, pain and swelling of her lower extremities.  These flares would make it very difficult to maint[ai]n employment[,] as they happen so frequently and interfere with her ability to wear appropriate footwear.
>
> The medication that is being used to relieve the symptoms of this disease are fairly high doses of gabapentin which can cause fatigue.  If you need anything further, you may contact our office.[34]

In October 2019, Plaintiff's treating podiatrist, Brent Thielges, DPM, wrote in relevant part:

> [Plaintiff]'s Erythromelalgia (Mitchell's disease) is an incurable disease that causes increased vascularity (warmth, redness, swelling) to both her feet as well as neuropathy and neuropathic pain.  She is currently on Gabapentin 600mg TID with an additional 400mg tab on bad days, this is a high dose that is not controlling her pain well. . . .
>
> Patient's nerve pain is so bad she cannot wear closed shoes.  Closed shoes also exacerbate her condition due to the warmth of being in a shoe.  She cannot ambulate for longer than 5–10 minutes due to the pain.  Patient has not been able to exercise due to her condition and is losing strength and muscle conditioning . . . .

---

[34] AR 344.

> In determining her impairments, any pain she is experiencing is subjective to the patient.  Prognosis of her symptoms is poor[;] the disease is not curable and will be a life-long condition.[35]

The ALJ found Dr. Thapa's letter unpersuasive based on its timing.[36]  The ALJ noted that Dr. Thapa did not treat Plaintiff during the relevant period, and the ALJ found Dr. Thapa's opinions had described only Plaintiff's then-current condition and limitations, concluding they were therefore "not relevant for the period at issue from October 2013 through December 2016."[37]

The ALJ did not address, cite, or mention Dr. Thielges' letter whatsoever. As such, and because the ALJ found Plaintiff lacked any severe medically determinable impairments during the relevant period, the ALJ effectively found Dr. Thielges' letter unpersuasive.[38]

//

/

---

[35] AR 446.

[36] AR 26.

[37] AR 26.

[38] Although the ALJ did not expressly address Dr. Thielges' letter or the opinions contained therein, the Court notes that the same reasons the ALJ gave for discounting Dr. Thapa's opinions would apply with equal force to those of Dr. Thielges.

b.  <u>*The ALJ failed to expressly consider the supportability and*</u>

<u>*consistency factors.*</u>

An ALJ must consider and articulate how persuasive she found each medical opinion.[39]  Further, in assessing a given medical opinion, the ALJ is required to explain her considerations regarding supportability and consistency, which are deemed the most important factors when assessing medical-opinion persuasiveness.[40]  As the ALJ's decision lacks any discussion regarding the supportability and/or consistency of Dr. Thapa's and Dr. Thielges' opinions, the ALJ erred.

Arguably, this omission, by itself, would have been harmless if Dr. Thapa's and Dr. Thielges' opinions were truly irrelevant to the issue of Plaintiff's pre-2017 impairments, symptoms, and limitations.  But—in the context of an incurable, "life-long" condition[41]—the presence of severe symptoms in 2019 tends to make it more probable that Plaintiff was experiencing significant symptoms prior to 2017.[42] Courts have recognized that "medical evaluations made after the expiration of a

---

[39] 20 C.F.R. § 404.1520c(c)(1)–(5).

[40] *Id.* § 404,1520c(a), (b), (c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[41] *See* AR 446.

[42] Fed. R. Evid. 401(a) (defining evidence as relevant so long as it has "any tendency to make a [consequential] fact more or less probable than it would be without the evidence").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

1   claimant's insured status are relevant to an evaluation of the pre-expiration

2   condition."[43]

3        Of course, what weight post-expiration evidence should receive will vary

4   greatly depending on myriad factors, such as the general nature of the condition,

5   the condition's course of progression, and to what extent the evidence at issue is

6   consistent with the other evidence of record.  Yet, if the ALJ considered such

7   factors here, she did so silently.  Absent any discussion regarding the consistency

8   and supportability factors—or the nature and progression of Plaintiff's ultimately

9   disabling conditions—the ALJ's persuasiveness findings lack the requisite

10  supporting substantial evidence and fail to allow for meaningful review.[44]

11  //

12  /

13

14  _____

15  [43] *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (quoting *Smith v. Bowen*, 849

16  F.2d 1222, 1225 (9th Cir. 1988)), *superseded on other grounds by regulation*, 20

17  C.F.R. pts. 404 & 416.

18  [44] *See Nguyen v. Chater*, 100 F.3d 1362, 164 (9th Cir. 1996); *Embrey v. Bowen*, 849

19  F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify evidence and

20  provide reasoning sufficient to permit meaningful review); *Blakes v. Barnhart*, 331

21  F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical

22  bridge from the evidence to her conclusions so that we may afford the claimant

23  meaningful review of the SSA's ultimate findings.").

2.   <u>Reviewing Physician Howard Platter, MD</u>

On December 16, 2019, upon reconsideration of Plaintiff's disability applications, Disability Determination Services physician Howard Platter, MD, noted signs and symptoms of erythromelalgia in the record.[45]  He explained, "We are seeing [a] rare disorder which only recently has been diagnosed as Mitchell's disease.  This is improved with treatment but swelling and redness of [lower extremities] persists intermittently . . . ."[46]  Dr. Platter found that Plaintiff "has had the symptoms since 2010 at least."[47]  He then reiterated that her "symptoms and illness started in 2010 and has progressed significantly," saying, "the medical documentation of [Plaintiff's] progression of her illness supports that [she] would not be able to sustain a full work day/full work week—and her RFC is significantly less than sedentary for [Title] 16, and remains insufficient for [Title] 2 at [the date last insured]."[48]  Nonetheless, Dr. Platter concluded that the record lacked sufficient pre-2017 medical evidence to find that Plaintiff's erythromelalgia had been disabling back then.[49]

*//*

---

[45] AR 85, 96.

[46] AR 98.

[47] AR 85, 96.

[48] AR 85, 96.

[49] AR 85, 96.

The ALJ found Dr. Platter's opinions persuasive, explaining that Dr. Platter was able to review the record, he had Social-Security program expertise, and his opinions were "well supported by the lack of treatment/medical evidence through the date last insured."[50]  These are valid reasons and provide substantial evidence in support of the ALJ's persuasiveness finding.[51]  That said, because Dr. Platter indicated the medical record was insufficient to determine if erythromelalgia was disabling pre-2017, the ALJ should have developed the record as to the relevant period.  No matter how persuasive his opinions, Dr. Platter left many questions unanswered, including the nature and expected progression of erythromelalgia, as well as Plaintiff's actual onset date.[52]

**B.    Step Two: The ALJ reversibly erred.**

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[53]  This involves a two-step process: (1) determining whether the claimant has a medically determinable

---

[50] AR 26.

[51] *See* 20 C.F.R. § 404.1520c(c).

[52] In lieu of making a finding as to Plaintiff's actual onset date, for purposes of the Title 16 application, the agency used Plaintiff's filing date as the Established Onset Date. *See* AR 100.

[53] 20 C.F.R. § 404.1520(c).

impairment and (2), if so, determining whether the impairment is severe.[54]  To establish the existence of an impairment at the first step, diagnoses, medical opinions, and/or the claimant's symptom reports—even in combination—will not suffice.[55]   Rather, an impairment "must be established by objective medical evidence from an acceptable medical source."[56]  Only if objective medical evidence demonstrates the claimant has a medically determinable impairment, must the ALJ then determine whether that impairment is severe.[57]

The severity determination is discussed in terms of what is *not* severe.[58]  A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[59]  Unlike at the first step, when assessing impairment severity, medical

---

[54] 20 C.F.R. § 404.1520(a)(4)(ii).

[55] *Id.* § 404.1521.

[56] *Id.* § 404.1521.

[57] *See* SSR 85-28 at *3.

[58] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[59] *Id.*; *see also* SSR 85-28 at *3.

opinions may be considered along with the rest of the medical evidence.[60]  Because step two is simply to screen out weak claims,[61] "[g]reat care should be exercised in applying the not severe impairment concept."[62]

It is already established that Plaintiff currently suffers from the severe medically determinable impairment of erythromelalgia; it is also established that her current symptoms are so severe as to render her disabled under the Act.[63]  The point of contention, and what the ALJ should have determined when conducting the step-two analysis, is *when* Plaintiff became disabled.

/////

////

///

//

/

---

[60] *See* SSR 85-28 at *4 ("At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

[61] *Smolen*, 80 F.3d at 1290.

[62] SSR 85-28 at *4.

[63] *See* AR 100 (determining on reconsideration that, for purposes of Title 16 benefits, Plaintiff was already disabled when she submitted her applications on February 26, 2019).

a.   _The ALJ failed to determine the first date on which Plaintiff_
_was disabled._

If, as here, a claimant with a "non-traumatic or exacerbating and remitting impairment" meets the definition of disability, ALJs are instructed to "determine the first date that the claimant met that definition."[64]  This determination "must be supported by the medical and other evidence and be consistent with the nature of the impairment(s)."[65]  Still, the date of disability "may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records," meaning contemporaneous medical records are not required—the disability onset date may be supported by later-created medical evidence.[66] Further, if the ALJ cannot reasonably infer the onset date based on the medical evidence of record, the ALJ "may consider evidence from other non-medical sources such as the claimant's family, friends, or former employers."[67]

---

[64] SSR 18-01p (2018).

[65] _Id._

[66] _Id._

[67] _Id. Cf. also Diedrich v. Berryhill_, 874 F.3d 634, 640 (9th Cir. 2017) ("The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing.").

1    Here, if the ALJ were unable to reasonably infer Plaintiff's onset date from

2    the medical evidence, the record nonetheless contained highly probative evidence

3    from non-medical sources.  For example, Plaintiff's former boss wrote in part,

> In 2011 I noticed that her toes were bright red and asked her what
> was going on with her feet.  She complained that they were
> burning a lot.  Sometimes it was just her toes and other times it
> might be an entire foot.  When I asked her what she thought the
> problem was, she said that maybe she was eating too much salty
> food or maybe it had something to do with her blood pressure
> issues.  As time went on, I observed it getting worse and that her
> feet were swollen and flaring up more and more often.  By 2013
> she was really having trouble walking around and even sitting was
> very uncomfortable.  Her hands were giving her trouble as well.
> She complained of numbness and burning in her fingers when she
> was typing, filing, etc. . . . She came to work looking tired and was
> having trouble concentrating and remembering things.  It became
> more difficult to complete her many tasks.[68]

And one of Plaintiff's former coworkers observed the same symptoms (which

appear consistent with erythromelalgia and/or Raynaud's syndrome) starting

around 2011 and worsening over time.[69]  The ALJ rejected this evidence largely

because of a "lack of any medical evidence of hand/foot pain through the date last

insured."[70]  This, despite the Commissioner recognizing that such lay statements

can be of particular importance in this context precisely *because of* the dearth of

---

[68] AR 301.

[69] *See* AR 296 ("I think she might have attributed it to just being overworked.
When she left that job, the burning had already become quite bad and her feet and
hands became red and swollen.").

[70] *See* AR 26.

medical evidence speaking to the onset date of Plaintiff's established severe impairment.[71]

In the end, the ALJ failed to determine the first date that Plaintiff met the disability definition; the ALJ instead made an implied and generalized finding that Plaintiff's onset date came sometime after December 31, 2016.  The Court acknowledges that determining the onset date for a condition such as erythromelalgia is challenging.[72]  However, an ALJ may not render her own medical opinion; there must be evidence to support the ALJ's findings.  The ALJ did not indicate that she considered the nature and/or course of progression of Plaintiff's conditions (particularly her erythromelalgia).  Instead, the ALJ apparently simply decided that Plaintiff's erythromelalgia onset date was after 2017 based on Dr. Platter's notation that the evidence was insufficient to establish an earlier date.  However, no steps were taken by the ALJ to further develop the record about this rare condition of erythromelalgia.  For instance, the recork lacks medical evidence regarding whether erythromelalgia has a typical course of

---

[71] *See* SSR 18-01p.

[72] *See Diedrich*, 874 F.3d at 639; SSR 18-01p, at I.B.2 (highlighting that if more information is needed beyond the then-current medical record or evidence from non-medical sources, the ALJ can call a medical expert to help determine whether the claimant with a progressive impairment met the statutory definition of disability during the relevant period).

progression and, if so, its timeline.  Further, expert testimony about

erythromelalgia in general and Plaintiff's apparent progression of symptoms could

help inform the issue of Plaintiff's onset date.[73]  Because the ALJ's decision gives

no indication that she sufficiently considered the nature and/or course of

progression of Plaintiff's conditions (particularly her erythromelalgia), the Court

cannot find this error harmless.

> ### b.    The ALJ is to consult a medical expert on remand.

It was difficult for Plaintiff's own treating physicians to diagnose her

symptoms.[74]  Also, the lack of accurate diagnoses means that treatment providers

may have misattributed some pre-diagnosis symptom reports to other causes.[75]  As

such, in addition to providing information about the conditions in general, medical

---

[73] See Tackett v. Apfel, 180 F.3d 1094, 1102–03 (9th Cir. 1999).

[74] See AR 50–52.

[75] See, e.g., AR (Aug. 2017: Plaintiff was seen for left-foot cellulitis, possibly related to a spider bite; Raynaud's syndrome was listed as an active problem; Plaintiff presented with "erythematous discoloration over bilateral hands, upper arms and chest"). Cf. also Mayo Clinic, Cellulitis Overview, https://www.mayoclinic.org/diseases-conditions/cellulitis/symptoms-causes/syc-20370762 (cellulitis "is a common, potentially serious bacterial skin infection.  The affected skin is swollen and inflamed and is typically painful and warm to the touch.").

expertise is likely necessary to assist in discerning what, if anything, within the admittedly sparse early medical records can be tied to erythromelalgia and/or Raynaud's syndrome.[76]

Although an ALJ generally retains discretion in deciding whether to call a medical expert for purposes of assessing an onset date,[77] without the aid of a medical expert here, any ALJ assessment of the disability onset date would likely amount to mere speculation.[78]  Thus, the Court directs the ALJ on remand to retain a medical expert who is knowledgeable regarding erythromelalgia.  **"Even**

---

[76] For example, Plaintiff testified that some of her sleeping problems and back problems during the relevant period were related to her erythromelalgia causing her to frequently move and sleep in odd positions (such as hanging her legs of the side of the bed) in an attempt to get comfortable. AR 49–50.

issues." AR 50.

[77] *See* SSR 18-01p ("The decision to call on the services of an ME is always at the ALJ's discretion."). *But see Diedrich*, 874 F.3d at 639–40 (holding it was error not to call a medical advisor at the hearing to help determine the precise onset date of disability where there were "large gaps in the medical records documenting a slowly progressive impairment").

[78] *See Diedrich*, 874 F.3d at 639 (finding under similar circumstances that "an ALJ's assessment of the disability onset date would be mere speculation without the aid of a medical expert.").

with a medical advisor, the date of onset of disability in this challenging case might
[remain] somewhat debatable and mysterious.  But with testimony from a medical
advisor, at least the ALJ could exercise an informed judgment based on medical
science."[79]

## V.     Conclusion

Plaintiff suffers from incurable, life-long conditions, and there is no dispute
that she at some point became disabled due to the associated symptoms.  The bulk
of the evidence—including the medical opinions found persuasive by the ALJ—
suggest that Plaintiff's symptoms started out as less severe around 2010 and have
worsened over time.  This leaves open the questions of when Plaintiff's medically
determinable impairment became severe, when her symptoms first rose to the level
of disability, and whether this onset date falls within the relevant period.  Given
the progressive nature of Plaintiff's conditions, the Court holds that the ALJ
reversibly erred by failing to determine Plaintiff's onset date for purposes of Title 2.

//////
/////
////
///
//
/

---

[79] *Id.* at 639–40.

## VI.    Remand: Further proceedings are required.

Although the ALJ reversibly erred, Plaintiff has not clearly established that she was disabled during the relevant period.  Remand for further proceedings is required because further development is necessary for a proper disability determination.[80]

## A.    Summary and Instructions on Remand

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4.    This decision of the ALJ is **REVERSED** and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

5.    On remand, the ALJ shall conduct anew the disability evaluation, beginning at step two, subject to the following instructions:

    a.  To assist the ALJ (as well as any reviewing court) in understanding Plaintiff's conditions, interpreting the medical

---

[80] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

evidence, and ascertaining the progression of Plaintiff's impairment(s), the ALJ shall obtain medical-expert testimony from an expert well versed in erythromelalgia.

**b.** At step two, consistent with SSR 18-01p, the ALJ shall determine the first date on which Plaintiff met the statutory definition of disability. Also, as part of this analysis, the ALJ must ascertain and expressly address whether Plaintiff's erythromelalgia and/or Raynaud's syndrome became severe by December 31, 2016. If Plaintiff had a severe medical impairment by December 31, 2016, the ALJ shall proceed with the remaining disability-assessment steps as appropriate.

**c.** In determining Plaintiff's onset date, to allow for meaningful court review, the ALJ shall carefully—and expressly—consider the lay statements of Plaintiff's former coworker and former employer, found at AR 296 and 301, respectively. If the ALJ again rejects these statements, the ALJ should not rely on a mere absence of corroborating medical evidence in the record, and the ALJ shall articulate valid reasons for rejecting such compelling evidence.

**d.** With respect to the medical-opinion evidence, the ALJ must meaningfully articulate the supportability and consistency of each medical opinion.

**e.** The ALJ shall further develop the record if she deems it necessary.

//

**6.**    The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 6th day of March 2023.

_____
EDWARD F. SHEA
Senior United States District Judge